## **AFFIDAVIT**

I, Christopher F. Scott, having been duly sworn, depose and state as follows:

## **INTRODUCTION**

1. I have been employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") since 2002 and am currently assigned to the Bridgewater, Massachusetts, ATF Field Office. I have previously been assigned to ATF Field Offices in Fresno, California, and Norfolk, Virginia. As a Special Agent for ATF, I am authorized to investigate violations of United States laws and some of my duties include the investigation of firearms possession by prohibited persons and firearms and narcotics trafficking.

2. As an ATF Agent I have participated in and conducted dozens of investigations involving firearm trafficking, and firearms possession by persons, including felons, gang members, parolees, narcotics users and narcotics and firearms traffickers. I learned the methods that are most commonly used by unlawful firearms traffickers, and people dealing in firearms without a Federal Firearms License. I learned this through law enforcement training, participating in undercover purchases of firearms, surveillance of firearms traffickers, interviews of suspects, by participating in search warrants and title III electronic surveillances, and through analytical analysis of firearms trace data, newspaper classified advertisements, online web sites and forums in which firearms sales are facilitated. Based on my training and experience as an ATF Special Agent, I am familiar with the federal firearms laws.

3. Based on my training and experience, I am aware that a violation of 18 U.S.C § 922(g)(1), makes it a federal offense for any individual, who has previously been convicted of a crime punishable by imprisonment for a term exceeding one year, to possess a firearm or ammunition in or affecting interstate commerce.

4. This affidavit is being submitted in support of a complaint charging Juan Francisco David ("DAVID"), year of birth 1972, with a violation of 18 U.S.C. § 922(g)(1).

5. The statements set forth in this affidavit are based in part on my investigation of the matter as well as on information provided by ATF and other law enforcement officials. This affidavit is being submitted for the limited purpose of establishing probable cause to believe DAVID violated 18 U.S.C. §922(g)(1). It therefore, does not include all of the facts known to me concerning this investigation.

## **PROBABLE CAUSE**

6. On 4/2/18, Weymouth Police Detectives investigated a report of a theft of firearms from Weymouth Sportsmens Club ("Club"), a recreational firearms range and indoor/outdoor field sports facility. The Club's president reported that the Club stored some firearms within some lockers for training purposes so accredited instructors can utilize them during various firearms classes. Some firearms were noticed to be missing and an initial inspection revealed that 2 handguns and approximately 3 rifles were missing from these storage lockers. Club members and Weymouth Police Officers reviewed security camera footage and it was quickly determined that club member, Joseph Fee ("Fee"), had taken the firearms during two separate visits to the Club, namely, on 3/30/18 and 3/31/18. Fee was identified via video by another club member.

7. Weymouth Police Detectives set out to locate Fee and soon learned that Fee had checked himself into the Carney Hospital for drug detox on 3/31/18. Weymouth Detectives contacted Fee at the hospital and Fee confessed to taking the firearms. In an effort to recover the firearms, Fee provided detectives with the names of two people he provided the stolen firearms to. Fee was unable to provide a complete name for one of these people, saying he only knew him as "Frankie" who utilized phone number xxx-xxx-0831.[1] On 4/2/18, Weymouth Detectives contacted the other person identified by Fee and were able to recover 4 of the 5 stolen firearms.

8. Detectives also contacted "Frankie" via telephone and inquired about retrieving the final stolen firearm, a Smith & Wesson, .38 caliber revolver. "Frankie" provided his name to Detectives as Frank Saez, d/o/b: 4/12/73. In conversation with a Weymouth Detective, "Frank" asked the Detective to specifically describe the firearm they were looking for. "Frank" gave the impression that he had conducted other firearm transactions with Fee and wanted to make sure he understood which firearm they were inquiring about. "Frank" told the Detective that he knew who had the firearm and would need to purchase it back from this other person for $200. Detectives made arrangements via telephone for "Frank" to bring the firearm to the Weymouth Police Station on 4/2/18. However, "Frank" never arrived.

---

[1] The phone number is known to authorities but is being redacted herein for safety reasons.

Detectives were unable to identify anybody in the area with the provided name and date of birth.

9. The following day, 4/3/18, Detectives again made contact with "Frank" via telephone. They arranged to meet "Frank" at a CVS store in Waltham, Massachusetts, in order to retrieve the Smith & Wesson, .38 revolver, which was the final stolen firearm from the Club. Upon their arrival into the CVS parking lot, a Weymouth Detective received an inbound phone call from "Frank" who instructed them to drive to the rear of the parking lot and the revolver could be found in a McDonalds bag, in a snow bank, against the rear fence. The detective retrieved the bag and noted the Smith & Wesson, .38 caliber revolver, s/n D540550, was inside the bag. Believing that "Frank" was in the area watching them, detectives canvassed the parking lot and noted the license plate numbers of several vehicles. One vehicle in particular stood out from the rest because a Hispanic male having a goatee was slouched back in the driver's seat. Detective Galvin noted the license plate from this Grey Nissan Maxima vehicle as Massachusetts #5DW275.

10. On 4/3/18, Fee was arrested by Weymouth Police and charged with larceny of firearms. Once at the Weymouth Police Station, Fee was provided his *Miranda* rights and signed a form acknowledging those rights. Thereafter, during a recorded interview, Fee described "Frank" as a large scale drug dealer and believed his last name to be David. Fee said that "Frank" was Hispanic male, having a goatee. Fee told detectives that besides the .38 caliber Smith & Wesson that he took from the Weymouth Sportsmens Club, he had also purchased other firearms from area gun shops, and then provided those firearms to "Frank" as well. Fee described these firearms as follows:

- Four Seasons Gun Shop in Woburn, MA – Fee stated that "Frank" recently accompanied him to this Federal Firearms Licensee (FFL). Fee purchased a pink, .38 caliber revolver and after the purchase he gave the firearm to "Frank".
- Hunters Trading Post in Weymouth, MA – Fee stated that he recently purchased 2 rifles from this FFL, a HiPoint .380 caliber rifle and a .22 caliber Smith & Wesson rifle. He subsequently gave both of these firearms to "Frank".
- Dicks Sporting Goods in Dedham, MA – Fee stated that he recently purchased a 12 gauge, Mossberg shotgun from this FFL. After the purchase he gave the firearm to "Frank".

11. I conducted a review of Fee's recent firearms purchase history and determined that since 2/6/18, Fee has purchased 10 firearms from area FFL's. The following dates and purchases match what Fee described above. There are also firearms Fee purchased for which he provided no disposition.
    - 3/4/18 – Dick's Sporting Goods in Dedham, MA, Fee purchased a 12-gauge Mossberg shotgun, s/n MV0184871.
    - 3/10/18 – Hunters Trading Post in Weymouth, MA, Fee purchased a .22 caliber Smith & Wesson, M&P rifle, s/n DEX5677.
    - 3/28/18 – Four Season's Gun Shop in Woburn, MA, Fee purchased a .38 caliber Charter Arms, Pink Lady revolver s/n 16-22380.
    - 3/20/18 – Hunter's Trading Post in Weymouth, MA, Fee purchased a .380 caliber HiPoint rifle, s/n Y05801.
12. Video surveillance was obtained from Four Season's Gun Shop in Woburn, Massachusetts, from the date of 3/28/18. It is noted that during this purchase, Fee told Detectives that "Frank" accompanied him to the FFL. I reviewed the surveillance video and observed a male, approximately 40-45 years old, having a goatee, wearing a camouflage ball cap, a hooded sweatshirt, cargo pants, and dog tags hanging low around his neck, accompanying Fee during the purchase. The two arrived together and the other male and Fee were observed talking together as they examined firearms in the display case. Eventually Fee completed the firearm purchase and the two walked out of the FFL together. The male who accompanied Fee had a tribal tattoo on his right arm and an unrecognizable tattoo on his inner left forearm.
13. Video surveillance was also obtained from Bass Pro Shops in Foxboro, Massachusetts from 3/25/18. It was noted that despite this video footage being of a substantially lower quality, it appeared that Fee was followed inside this FFL by another male who was dressed similarly to "Frank." For example, this male wore a hooded sweatshirt, ball cap, and tan pants. This male followed Fee to the gun counter area and something resembling dog tags hung low from his neck. On this date, Fee purchased a 9mm Smith & Wesson pistol, s/n FZK7348.
14. Weymouth Detectives examined the FFL surveillance photos and determined that the male who accompanied Fee during the firearm purchase looked much the same as the male whom they previously observed slouched in the driver seat of the Nissan Maxima, Massachusetts vehicle with license plate #5DW275, on the date they went to meet "Frank" in Waltham,

Massachusetts, to retrieve one of the stolen firearms. It was subsequently determined that the Nissan Maxima was registered to Enterprise Rental Car.

15. Through investigation it was determined that the Nissan Maxima was rented by Lisa Nicolazzo, 258 Cherry Street, Newton, Massachusetts. In researching tenants at 258 Cherry Street, and associates of Nicolazzo, it was learned that a man named Juan Francisco David ("DAVID"), d/o/b: 4/12/72, shared an address with her at 258 Cherry Street, Newton, Massachusetts. I conducted a computerized criminal history check on Juan DAVID and found out that his mother's last name was Saez. I obtained a Massachusetts Registry of Motor Vehicle ("RMV") photograph of DAVID and noted that it appeared to be the same person, "Frankie," who accompanied Fee during the firearm purchase on 3/28/18. Weymouth Detectives also concurred with this finding. It is also noted that when "Frankie" provided his name as Frank Saez to a Weymouth Detective, "Frankie" provided a d/o/b of 4/12/73, which is exactly 1 year off from DAVID's actual d/o/b: 4/12/72. Additionally, I compared photographs of tattoos taken during prior arrests of DAVID and noted a tribal tattoo on his right arm and a flower tattoo on his inner left forearm. These tattoos matched the location and appearance of tattoos captured during the FFL surveillance video of "Frankie" on 3/28/18.

16. I also contacted a Detective at the Suburban Middlesex Drug Task Force ("Task Force") who indicated that the task force was familiar with DAVID as they have received information over the years that he was a drug dealer who possessed firearms. The detective further stated that the Task Force believed that DAVID no longer resided on Cherry Street, and that he has resided on Faxon Street in Newton for over a year. With that, additional record checks were performed and an address of 46-48 Faxon Street was developed as the current address for Lisa Nicolazzo. The detective also confirmed this as a current address for DAVID as well. He further stated that during the summer of 2017, the Task Force received a report from a confidential informant ("CI") that he/she conducted a narcotics transaction with "Frankie" DAVID at that residence. Furthermore, this CI also reported that DAVID possessed two firearms inside the residence.

17. The Task Force Detective informed me that DAVID owns a white Dodge Ram pickup truck, with Massachusetts license plate # US798X, that currently remains parked in the driveway of 46-48 Faxon Street, and which has not moved from that position in quite some time. The

RMV records pertaining to that vehicle indicated that the registered owner is Juan DAVID at 258 Cherry St, Newton. The registration status is revoked.

18. The computerized criminal history report indicates that Juan DAVID, year of birth 1972, has previously been convicted of several crimes punishable by imprisonment for a term exceeding one year, including, Assault with a Dangerous Weapon and Malicious Destruction of Property, Possession of Class B, Possession of Class E, Possession of Class D, and Carrying a Dangerous Weapon (multiple counts), Breaking and Entering Nighttime with Intent to Commit a Felony, and Distribution of Class B.

19. Based on my training and experience, I know that it is unlawful for someone who has been convicted in any court of a crime punishable by imprisonment for a term exceeding 1 year to possess firearms. I also know that people who are prohibited from possessing firearms may often turn to "straw purchasers" (people who are not prohibited), to purchase firearms on their behalf.

20. During the weekend of 4/7/18, Middlesex Drug Task Force Detectives performed surveillance and observed DAVID coming and going from the right side of the residence, 48 Faxon Street. They also observed him operating the gray Nissan Maxima, Massachusetts license plate #5DW275. On 4/6/18, the gray Nissan Maxima was observed parked on the street in front of the residence of 48 Faxon Street. During the morning of 4/7/18, DAVID was observed arriving at that residence driving the gray Nissan Maxima, Massachusetts license plate #5DW275. DAVID utilized a set of keys and entered through the right side door marked "48." Within 15 minutes, DAVID exited the same door wearing different clothes. Later that afternoon, DAVID again departed the residence, exiting from the door marked "48." Approximately 50 minutes later, DAVID returned carrying a tray of drinks and a McDonalds bag. Again he utilized a set of keys to open the door marked "48." DAVID parked the gray Nissan Maxima either on the street in front of the residence, or in the side driveway of 48 Faxon Street. At one point during the day he exited 48 Faxon Street and was observed wearing dog tags around his neck and a camouflage hat.

**FEDERAL SEARCH WARRANT**

21. On April 9, 2018, in connection with this investigation, ATF obtained a search warrant for DAVID's residence located at 48 Faxon Street, Newton, Massachusetts. *See* 18-mj-6105-MPK.

22. On April 11, 2018, ATF, together with the Task Force, executed the search warrant. When agents arrived at the residence to execute the search warrant, DAVID came to the front door. DAVID was advised of his rights pursuant to *Miranda*, and agreed to speak with law enforcement.

23. A search of the residence was conducted by law enforcement. When searching, agents located a 9 mm S&W pistol, s/n FZK7348, in a front bedroom. This pistol was located in a locked container, inside of a tool box. The key to open this locked container was found on a set of keys located on top of a dresser. Contained with this pistol were two firearm magazines, one being loaded with eight rounds of 9 mm ammunition.

24. Agents also located a S&W .380 caliber pistol, s/n KEP9646. This firearm was attached to the underside of a table in the same bedroom. The firearm contained a firearm magazine that was loaded with five rounds of ammunition. Other rounds of ammunition, of various makes and calibers, were also found within the same front room.

25. When questioned about the firearms, DAVID stated another individual left the 9 mm S&W in DAVID's vehicle after the two went shooting at a firearms range. DAVID stated that he collected that firearm and put it into the locked container. When asked about the .380 caliber S&W that was found under the table, DAVID stated "[Y]eah. I put that there."
When asked about the other assorted rounds of ammunition, found within the same front room, DAVID stated the ammunition was left over from shooting at a firearms range.

26. The assorted rounds of ammunition include some that bear a headstamp of Remington and Federal, respectively. ATF Special Agent Jacob Berrick knows that Remington and Federal ammunition is manufactured outside of the Commonwealth of Massachusetts. Therefore, the ammunition traveled into Massachusetts and affected interstate commerce.

## CONCLUSION

27. Based on the foregoing, I respectfully submit there is probable cause to believe that on or about April 11, 2018, DAVID, an individual who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, did possess ammunition in or affecting commerce, in violation of 18 U.S.C. § 922(g)(1).

Sworn to under the penalties of perjury,

_____
Christopher F. Scott
ATF Special Agent


Subscribed and sworn to before me this 11th day of April, 2018.

_____
ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS